# EXHIBIT B

# SECURITY AGREEMENT

**made by**

**INDUSTRIAL MINERAL GROUP, LLC**
**And**
**KOPPER GLO MINING, LLC**

**in favor of**

**BLUE TARPON CAPITAL, LLC,**
**as Lender**

**Dated as of March 13, 2018**

# TABLE OF CONTENTS

Page No.

**SECTION 1**
DEFINED TERMS
1.1        Definitions..................................................................................................... 1
1.2        Other Definitional Provisions. ...................................................................... 2

**SECTION 2**
GRANT OF SECURITY INTEREST

**SECTION 3**
REPRESENTATIONS AND WARRANTIES
3.1        Title; No Other Liens ................................................................................... 4
3.2        Perfected First Priority Liens ....................................................................... 4
3.3        Organizational Information............................................................................ 4
3.4        Farm Products ............................................................................................... 4
3.5        Receivables................................................................................................... 4
3.6        Solvency........................................................................................................ 4

**SECTION 4**
COVENANTS
4.1        Delivery of Instruments and Chattel Paper .................................................. 4
4.2        Insurance ....................................................................................................... 5
4.3        Maintenance of Perfected Security Interest; Further Documentation.......... 5
4.4        Changes in Locations, Name, etc.................................................................. 5
4.5        Notices .......................................................................................................... 5
4.6        Receivables. .................................................................................................. 5

**SECTION 5**
REMEDIAL PROVISIONS
5.1        Certain Matters Relating to Receivables....................................................... 6
5.2        Communications with Obligors; Grantors Remain Liable. ........................... 6
5.3        Proceeds to be Turned Over To Secured Party .............................................. 7
5.4        Application of Proceeds ................................................................................ 7
5.5        Code and Other Remedies. ............................................................................ 8
5.6        Waiver; Deficiency ....................................................................................... 9
5.7        Non-judicial Enforcement ............................................................................. 9

**SECTION 6**
THE SECURED PARTY
6.1        Secured Party's Appointment as Attorney-in-Fact etc. ................................ 9
6.2        Duty of Secured Party ................................................................................... 10
6.3        Financing Statements .................................................................................... 11
6.4        Authority of Secured Party ........................................................................... 11

**SECTION 7**
SUBORDINATION OF INDEBTEDNESS
7.1        Subordination of All Guarantor Claims........................................................ 11
7.2        Claims in Bankruptcy ................................................................................... 12

Case 3:20-cv-00334-DCLC-DCP   Document 1-2   Filed 07/30/20   Page 3 of 25   PageID #: 30

| | | |
|---|---|---|
| 7.3 | Payments Held in Trust | 12 |
| 7.4 | Liens Subordinate | 12 |
| 7.5 | Notation of Records | 12 |

**SECTION 8**
MISCELLANEOUS

| | | |
|---|---|---|
| 8.1 | Amendments in Writing | 12 |
| 8.2 | Notices | 12 |
| 8.3 | No Waiver by Course of Conduct; Cumulative Remedies | 13 |
| 8.4 | Successors and Assigns | 13 |
| 8.5 | Set-Off | 13 |
| 8.6 | Counterparts | 13 |
| 8.7 | Severability | 13 |
| 8.8 | GOVERNING LAW | 13 |
| 8.9 | Submission To Jurisdiction; Waivers | 14 |
| 8.10 | Acknowledgments | 14 |
| 8.11 | WAIVER OF JURY TRIAL | 14 |
| 8.12 | Section Headings | 14 |
| 8.13 | Additional Grantors | 15 |
| 8.14 | Releases; Continuing Agreement | 15 |
| 8.15 | Acceptance | 15 |
| 8.16 | Reinstatement | 15 |

Case 3:20-cv-00334-DCLC-DCP   Document 1-2   Filed 07/30/20   Page 4 of 25   PageID #: 31

# SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of March 13, 2018, is made by **INDUSTRIAL MINERALS GROUP, LLC**, a Delaware limited liability company (the "**Parent**"), **KOPPER GLO MINING, LLC**, a Delaware limited liability company and wholly owned subsidiary of Parent ("**Subsidiary**" and together with Parent, the "**Borrowers**" and, together with any other entity that may become a party hereto as provided herein, the "**Grantors**"), in favor of **BLUE TARPON CAPITAL, LLC**, as lender (the "**Secured Party**").

## W I T N E S S E T H:

WHEREAS, the Borrowers, as borrower and the Secured Party executed that certain Senior Secured Promissory Note dated as of even date herewith (such agreement, as may from time to time be amended or supplemented, the "**Note**"), pursuant to which upon the terms and conditions stated therein, the Secured Party agreed to provide a loan to the Borrowers; and

WHEREAS, it is a condition precedent to the obligation of the Secured Party to make its loan to the Borrowers under the Note that the Grantors shall have executed and delivered this Agreement to the Secured Party for its benefit.

NOW, THEREFORE, in consideration of the premises and to induce the Secured Party to enter into the Note and to induce the Secured Party to make its loan to the Borrowers thereunder, each Grantor hereby agrees with the Secured Party, for the benefit of the Secured Party, as follows:

## SECTION 1
## DEFINED TERMS

1.1 **Definitions**.

(a) Unless otherwise defined herein, terms defined in the Note and used herein shall have the meanings given to them in the Note, and the following terms which are defined in the Code are used herein as so defined: Accounts, Chattel Paper, Farm Products, Instruments and Inventory, Payment Intangibles, Records and Software.

(b) The following terms shall have the following meanings:

"**Agreement**": this Security Agreement, as the same may be amended, supplemented or otherwise modified from time to time.

"**Code**": the Uniform Commercial Code as from time to time in effect in the State of Texas.

"**Collateral**": as defined in Section 2.

"**Collateral Account**": any collateral account established by the Secured Party as provided in Section 5.1 or Section 5.3.

"**General Intangibles**": all "general intangibles" as such term is defined in Section 9.102 of the Code and, in any event, including, without limitation, with respect to any Grantor, all

contracts, agreements, instruments and indentures in any form, and portions thereof, to which such Grantor is a party or under which such Grantor has any right, title or interest or to which such Grantor or any property of such Grantor is subject, as the same may from time to time be amended, supplemented or otherwise modified, including, without limitation, (i) all rights of such Grantor to receive moneys due and to become due to it thereunder or in connection therewith, (ii) all rights of such Grantor to damages arising thereunder and (iii) all rights of such Grantor to perform and to exercise all remedies thereunder, in each case to the extent the grant by such Grantor of a security interest pursuant to this Agreement in its right, title and interest in such contract, agreement, instrument or indenture is not prohibited by such contract, agreement, instrument or indenture without the consent of any other party thereto, would not give any other party to such contract, agreement, instrument or indenture the right to claim breach of contract or a default thereunder and/or terminate its obligations thereunder, or is permitted with consent if all necessary consents to such grant of a security interest have been obtained from the other parties thereto (it being understood that the foregoing shall not be deemed to obligate such Grantor to obtain such consents); provided, that, the foregoing limitation shall not affect, limit, restrict or impair the grant by such Grantor of a security interest pursuant to this Agreement in any Receivable or any money or other amounts due or to become due under any such contract, agreement, instrument or indenture.

"**Obligations**": the obligations of Borrower (i) to pay all indebtedness arising out of this Agreement and all renewals, extensions or amendments of such indebtedness or any part thereof; (ii) to pay the principal of and interest on the Note in accordance with the terms thereof, and all renewals, extensions, modifications and amendments of such Note or any part thereof; (iii) to repay to Lender all amounts advanced by Lender hereunder or under the other Loan Documents on behalf of Borrower, including, without limitation, advances for principal or interest payments to prior secured parties, mortgagees, or lienors, or for taxes, levies, insurance, rent, repairs to or maintenance or storage of any of the collateral; (iv) to perform fully all of the terms and provisions of each of the instruments constituting the Loan Documents; and to reimburse Lender for all of Lender's expenses and costs which Borrower is obligated to pay pursuant to the terms of the Loan Documents.

"**Proceeds**":  all "proceeds" as such term is defined in Section 9.102 of the Code.

"**Receivable**":  the collective reference to any right to payment for goods sold or leased or for services rendered, whether or not such right is evidenced by an Instrument or Chattel Paper and whether or not it has been earned by performance (including, without limitation, any Account).

1.2    **Other Definitional Provisions**.

(a)    The words "**hereof**," "**herein**," "**hereto**" and "**hereunder**" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section and Schedule references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

2

(c)     Where the context requires, terms relating to the Collateral or any part thereof, when used in relation to a Grantor, shall refer to such Grantor's Collateral or the relevant part thereof.

**SECTION 2**
**GRANT OF SECURITY INTEREST**

Each Grantor hereby pledges, assigns and transfers to the Secured Party, and hereby grants to the Secured Party, for the ratable benefit of the Secured Party, a security interest in, all of the following property now owned or at any time hereafter acquired by such Grantor or in which such Grantor now has or at any time in the future may acquire any right, title or interest (collectively, the "**Collateral**"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations:

(a)     all Accounts;

(b)     all Chattel Paper (including all tangible and electronic chattel paper);

(c)     all General Intangibles (including Payment Intangibles and Software);

(d)     all Instruments;

(e)     all Inventory;

(f)     all Receivables, to the extent not otherwise described above;

(g)     all rights arising under any Hedge Agreements;

(h)     all books and Records pertaining to the Collateral; and

(i)     to the extent not otherwise included, all Proceeds and products of any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

Notwithstanding the foregoing, the security interest granted herein shall not extend to and the term "Collateral" shall not include any equipment or other property subject to a third party's Liens, provided that such third party's Liens are Liens of the type described in subsections (e) and (f) of the definition of Permitted Liens; and provided further that such equipment or other property shall be deemed "Collateral" hereunder if such third party's Lien is released or otherwise terminated.

**SECTION 3**
**REPRESENTATIONS AND WARRANTIES**

To induce the Secured Party to enter into the Note and to induce the Secured Party to make its loan to the Borrowers thereunder, the Grantors, jointly and severally, hereby represent and warrant to the Secured Party that to the best of their knowledge:

3

3.1 **Title; No Other Liens**.  Except for the Permitted Liens, such Grantor owns its respective items of the Collateral free and clear of any and all Liens or claims of others.  No financing statement or other public notice with respect to all or any part of the Collateral is on file or of record in any public office, except such as have been filed in favor of the Secured Party, for the benefit of the Secured Party, pursuant to this Agreement or as are filed to perfect or secure any other Permitted Liens.

3.2 **Perfected First Priority Liens**.  The security interests granted pursuant to this Agreement (a) upon completion of the filings and other actions specified on <u>Schedule 1</u> (which, in the case of all filings and other documents referred to on said Schedule, have been delivered to the Secured Party in completed and duly executed or authorized form) will constitute valid perfected security interests in all of the Collateral in favor of the Secured Party, for the benefit of the Secured Party, as collateral security for the Obligations, enforceable in accordance with the terms hereof against all creditors of such Grantor and any Persons purporting to purchase any Collateral from such Grantor and (b) are prior to all other Liens on the Collateral in existence on the date hereof.

3.3 **Organizational Information**.  On the date hereof, such Grantor's jurisdiction of incorporation, formation or organization, as applicable, organizational identification number, federal tax identification number and the location of such Grantor's chief executive office or sole place of business are specified on <u>Schedule 2</u>.

3.4 **Farm Products**.  None of the Collateral constitutes, or is the Proceeds of, Farm Products.

3.5 **Receivables**.  No amount payable to such Grantor under or in connection with any Receivable is evidenced by any Instrument or Chattel Paper in excess of $25,000 which has not been delivered to the Secured Party. The places where such Grantor keeps its records concerning such Grantor's Accounts are listed on <u>Schedule 2</u> or such other location or locations of which such Grantor shall have provided prior written notice to the Secured Party pursuant to <u>Section 4.4</u>.

3.6 **Solvency**.  Each Grantor (i) is not insolvent as of the date hereof and will not be rendered insolvent as a result of this Agreement, (ii) is not engaged in business or a transaction, or about to engage in a business or a transaction, for which any property or assets remaining with it constitute unreasonably small capital, and (iii) does not intend to incur, or believe it will incur, debts that will be beyond its ability to pay as such debts mature.

<u>SECTION 4</u>
<u>COVENANTS</u>

Each Grantor covenants and agrees with the Secured Party that, from and after the date of this Agreement until the Obligations shall have been paid in full:

4.1 **Delivery of Instruments and Chattel Paper**.  If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any Instrument or Chattel Paper having a value in excess of $25,000, such Instrument or Chattel Paper shall be immediately delivered to the Secured Party, duly indorsed in a manner satisfactory to the Secured Party, to be held as Collateral pursuant to this Agreement.

4

4.2    **Insurance**.  Each Grantor's Collateral shall be insured to the extent required by the Note.

4.3    **Maintenance of Perfected Security Interest; Further Documentation**.

(a)    Such Grantor shall maintain the security interest created by this Agreement as a perfected security interest having at least the priority described in Section 3.2 and shall defend such security interest against the claims and demands of all Persons whomsoever.

(b)    Such Grantor will furnish to the Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Secured Party may reasonably request, all in reasonable detail.

(c)    At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of such Grantor, such Grantor will promptly and duly execute, deliver and/or have recorded with appropriate agencies such further instruments and documents and take such further actions as the Secured Party may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted, including, without limitation, the filing of any financing or continuation statements under the Uniform Commercial Code (or other similar laws) in effect in any jurisdiction with respect to the security interests created hereby.

4.4    **Changes in Locations, Name, etc**.  Such Grantor will not, except upon 30 days' prior written notice to the Secured Party and delivery to the Secured Party of all additional executed financing statements and other documents reasonably requested by the Secured Party to maintain the validity, perfection and priority of the security interests provided for herein:

(a)    change the location of its chief executive office or sole place of business from that referred to in Section 3.3;

(b)    change its jurisdiction of incorporation, formation or organization, as applicable; or

(c)    change its name, identity or corporate structure to such an extent that any financing statement filed by the Secured Party in connection with this Agreement would become misleading.

4.5    **Notices**.  Such Grantor will advise the Secured Party promptly, in reasonable detail, of any Lien (other than a Permitted Liens) on any of the Collateral which would materially adversely affect the ability of the Secured Party to exercise any of its remedies hereunder.

4.6    **Receivables**.

(a)    Other than in the ordinary course of business, such Grantor will not (i) grant any extension of the time of payment of any Receivable, (ii) compromise or settle any Receivable for less than the full amount thereof, (iii) release, wholly or partially, any Person liable from the payment of any Receivable, (iv) allow any credit or discount whatsoever on any Receivable, or

5

(v) amend, supplement or modify any Account in any manner that could adversely affect the value thereof.

**SECTION 5**
**REMEDIAL PROVISIONS**

5.1    **Certain Matters Relating to Receivables**.

(a)    The Secured Party shall have the right to make test verifications of the Receivables in any manner and through any medium that it reasonably considers advisable, and the relevant Grantor shall furnish all such assistance and information as the Secured Party may reasonably require in connection with such test verifications.  At any time while an Event of Default shall have occurred and be continuing, upon the Secured Party's request and at the expense of the relevant Grantor, such Grantor shall cause independent public accountants or others satisfactory to the Secured Party to furnish to the Secured Party reports showing reconciliations, aging and test verifications of, and trial balances for, the Receivables.

(b)    The Secured Party hereby authorizes each Grantor to collect such Grantor's Receivables, and the Secured Party may curtail or terminate said authority at any time after the occurrence of an Event of Default.  If required by the Secured Party at any time after the occurrence of an Event of Default, any Proceeds constituting collections of such Receivables, when collected by such Grantor, (i) shall be forthwith (and, in any event, within two business days) be deposited by such Grantor in the exact form received, duly indorsed by such Grantor to the Secured Party if required, in a Collateral Account maintained under the sole dominion and control of the Secured Party, subject to withdrawal by the Secured Party for its own account only as provided in Section 5.4, and (ii) until so turned over, shall be held by such Grantor in trust for the Secured Party, segregated from other funds of such Grantor.  Each such deposit of Proceeds of Receivables shall be accompanied by a report identifying in reasonable detail the nature and source of the payments included in the deposit.  All Proceeds constituting collections of Receivables while held by the Collateral Account bank (or by any Grantor in trust for the benefit of the Secured Party) shall continue to be collateral security for the Obligations of the applicable Grantor and shall not constitute payment thereof until applied as hereinafter provided.  At any time when an Event of Default has occurred, at the Secured Party's election, the Secured Party may apply all or any part of the funds on deposit in the Collateral Account established by the relevant Grantor to the payment of the Obligations of such Grantor then due and owing, such application to be made as set forth in Section 5.4 of this Agreement.

(c)    At the Secured Party's request at any time after the occurrence of an Event of Default, each Grantor shall deliver to the Secured Party all original and other documents evidencing, and relating to, the agreements and transactions which gave rise to such Grantor's Receivables, including, without limitation, all original orders, invoices and shipping receipts.

5.2    **Communications with Obligors; Grantors Remain Liable**.

(a)    The Secured Party in its own name or in the name of others may at any time after the occurrence and during the continuance of an Event of Default communicate with obligors

6

under the Accounts to verify with them to the Secured Party's reasonable satisfaction the existence, amount and terms of any Accounts.

(b)     Upon the request of the Secured Party at any time after the occurrence of an Event of Default, each Grantor shall notify the obligors on the Accounts that the Accounts have been assigned to the Secured Party for the benefit of the Secured Party and that payments in respect thereof shall be made directly to the Secured Party.

(c)     Anything herein to the contrary notwithstanding, each Grantor shall remain liable under each of its Accounts to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with the terms of any agreement giving rise thereto.  The Secured Party shall not have any obligation or liability under any Account (or any agreement giving rise thereto) by reason of or arising out of this Agreement or the receipt by the Secured Party of any payment relating thereto, nor shall the Secured Party be obligated in any manner to perform any of the obligations of any Grantor under or pursuant to any Account (or any agreement giving rise thereto) to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party thereunder, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

5.3     **Proceeds to be Turned Over To Secured Party**.  In addition to the rights of the Secured Party specified in <u>Section 5.1</u> with respect to payments of Accounts, if an Event of Default shall occur and be continuing, all Proceeds received by any Grantor consisting of cash, checks and other near-cash items shall be held by such Grantor in trust for the Secured Party segregated from other funds of such Grantor, and shall, at the request of the Secured Party, forthwith upon receipt by such Grantor, be turned over to the Secured Party in the exact form received by such Grantor (duly indorsed by such Grantor to the Secured Party, if required). All Proceeds received by the Secured Party hereunder shall be held by the Secured Party in a Collateral Account maintained under its sole dominion and control.  All Proceeds while held by the Secured Party in a Collateral Account (or by such Grantor in trust for the Secured Party) shall continue to be held as collateral security for all the Obligations and shall not constitute payment thereof until applied as provided in <u>Section 5.4</u>.

5.4     **Application of Proceeds**.  At any time after the occurrence and during the continuance of an Event of Default, at the Secured Party's election, the Secured Party may apply all or any part of Proceeds of any Grantor held in any Collateral Account in payment of the Obligations of such Grantor in such order as the Secured Party may elect, and any part of such funds which the Secured Party elects not so to apply and deems not required as collateral security for such Obligations shall be paid over from time to time by the Secured Party to the Borrowers or to whomsoever may be lawfully entitled to receive the same.  Any balance of such Proceeds remaining after the Obligations shall have been paid in full shall be paid over to the Borrowers or to whomsoever may be lawfully entitled to receive the same.

5.5 **Code and Other Remedies**.

(a)     If an Event of Default shall occur and be continuing, the Secured Party may exercise, in addition to all other rights and remedies granted to them in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights and remedies of a secured party under the Code or any other applicable law or otherwise available at law or equity. Without limiting the generality of the foregoing, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon any Grantor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, at any exchange, broker's board or office of the Secured Party or elsewhere upon such commercially reasonable terms and conditions as it may deem advisable and at such commercially reasonable prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in any Grantor, which right or equity is hereby waived and released to the fullest extent permitted under applicable law. Each Grantor further agrees, at the Secured Party's request, to assemble its Collateral and make it available to the Secured Party at places which the Secured Party shall reasonably select, whether at such Grantor's premises or elsewhere. Any such sale or transfer by the Secured Party either to itself or to any other Person shall, to the fullest extent permitted under applicable law, be absolutely free from any claim of right by any Grantor, including any equity or right of redemption, stay or appraisal which such Grantor has or may have under any rule of law, regulation or statute now existing or hereafter adopted. Upon any such sale or transfer, the Secured Party shall have the right to deliver, assign and transfer to the purchaser or transferee thereof the Collateral so sold or transferred. The Secured Party shall apply the net proceeds of any action taken by it pursuant to this <u>Section 5.5</u> with respect to the Collateral of any Grantor, after deducting all reasonable costs and expenses of every kind incurred in connection therewith or incidental to the care or safekeeping of any of such Collateral or in any way relating to such Collateral or the rights of the Secured Party hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Obligations of such Grantor, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of law, including, without limitation, Section 9.608(a)(1) of the Code, need the Secured Party account for the surplus, if any, to the applicable Grantor. To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 days before such sale or other disposition.

(b)     In the event that the Secured Party elects not to sell the Collateral of any Grantor, the Secured Party retains its rights to dispose of or utilize such Collateral or any part or parts thereof in any manner authorized or permitted by law or in equity, and to apply the proceeds of the same towards payment of the Obligations of such Grantor. Each and every method of

Case 3:20-cv-00334-DCLC-DCP   Document 1-2   Filed 07/30/20   Page 12 of 25   PageID #: 39

disposition of the Collateral described in this Agreement shall constitute disposition in a commercially reasonable manner.

(c)     The Secured Party may appoint any Person as agent to perform any act or acts necessary or incident to any sale or transfer of the Collateral.

5.6     **Waiver; Deficiency**.  Each Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of its Collateral are insufficient to pay its Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

5.7     **Non-judicial Enforcement**.  The Secured Party may enforce its rights hereunder without prior judicial process or judicial hearing, and to the extent permitted by law, each Grantor expressly waives any and all legal rights which might otherwise require the Secured Party to enforce its rights by judicial process.

**SECTION 6**
**THE SECURED PARTY**

6.1     **Secured Party's Appointment as Attorney-in-Fact etc**.

(a)     Each Grantor hereby irrevocably constitutes and appoints the Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of such Grantor and in the name of such Grantor or in its own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement, and, without limiting the generality of the foregoing, each Grantor hereby gives the Secured Party the power and right, on behalf of such Grantor, without notice to or assent by such Grantor, to do any or all of the following:

(i)     in the name of such Grantor or its own name, or otherwise, take possession of and indorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under any of its Account or with respect to any of its other Collateral and file any claim or take any other action or proceeding in any court of law or equity or otherwise reasonably deemed appropriate by the Secured Party for the purpose of collecting any and all such moneys due under any of its Account or with respect to any of its other Collateral whenever payable;

(ii)     pay or discharge taxes and Liens levied or placed on or threatened against any of its Collateral, effect any repairs or any insurance called for by the terms of this Agreement and pay all or any part of the premiums therefor and the costs thereof;

(iii)     execute, in connection with any sale provided for in Section 5.5, any endorsements, assignments or other instruments of conveyance or transfer with respect to any of its Collateral; and

9

(iv) (l) direct any party liable for any payment under any of its Collateral to make payment of any and all moneys due or to become due thereunder directly to the Secured Party or as the Secured Party shall direct; (2) ask or demand for, collect, and receive payment of and receipt for, any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any of its Collateral; (3) sign and indorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications, notices and other documents in connection with any of its Collateral; (4) commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect any of its Collateral or any portion thereof and to enforce any other right in respect of any of its Collateral; (5) defend any suit, action or proceeding brought against such Grantor with respect to any of its Collateral; (6) settle, compromise or adjust any such suit, action or proceeding and, in connection therewith, give such discharges or releases as the Secured Party may deem appropriate; and (7) generally, sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of its Collateral as fully and completely as though the Secured Party were the absolute owner thereof for all purposes, and do, at the Secured Party's option and such Grantor's expense, at any time, or from time to time, all acts and things which the Secured Party deems necessary to protect, preserve or realize upon any of such Grantor's Collateral and the Secured Party's security interests therein and to effect the intent of this Agreement, all as fully and effectively as such Grantor might do.

Anything in this Section 6.1(a) to the contrary notwithstanding, the Secured Party agrees that it will not exercise any rights under the power of attorney provided for in this Section 6.1(a) unless an Event of Default shall have occurred.

(b) If any Grantor fails to perform or comply with any of its agreements contained herein within the applicable grace periods, the Secured Party, at its option, but without any obligation so to do, may perform or comply, or otherwise cause performance or compliance, with such agreement.

(c) The expenses of the Secured Party incurred in connection with actions undertaken as provided in this Section 6.1, together with interest thereon at a rate per annum equal to the rate per annum at which interest would then be payable under the Note from the date of payment by the Secured Party to the date reimbursed by the relevant Grantor, shall be payable by such Grantor to the Secured Party on demand.

(d) All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

6.2 **Duty of Secured Party**. The Secured Party's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9.207 of the Code or otherwise, shall be to deal with it in the same manner as the Secured Party deals with similar property for its own account and the Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which comparable secured parties accord

10

comparable collateral.  To the fullest extent permitted under applicable law, neither the Secured nor any of their respective officers, directors, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of any Grantor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.  The powers conferred on the Secured Party hereunder are solely to protect the Secured Party's interests in the Collateral and shall not impose any duty upon the Secured Party to exercise any such powers.  The Secured Party shall be accountable only for amounts that they actually receive as a result of the exercise of such powers, and neither they nor any of their officers, directors, employees or agents shall be responsible to any Grantor for any act or failure to act hereunder, except for their own gross negligence or willful misconduct.  To the fullest extent permitted by applicable law, the Secured Party shall be under no duty whatsoever to make or give any presentment, notice of dishonor, protest, demand for performance, notice of non-performance, notice of intent to accelerate, notice of acceleration, or other notice or demand in connection with any Collateral or the Obligations, or to take any steps necessary to preserve any rights against any Grantor or other Person or ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not it has or is deemed to have knowledge of such matters.  Each Grantor waives any right of marshaling in respect of any and all Collateral, and waives any right to require the Secured Party to proceed against any Grantor or other Person, exhaust any Collateral or enforce any other remedy which the Secured Party now has or may hereafter have against any Grantor or other Person.

6.3     **Financing Statements**.  Pursuant to Section 9.509 of the Code and any other applicable laws, each Grantor, to the fullest extent permitted under applicable law, authorizes the Secured Party to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral in such form and in such offices as the Secured Party reasonably determines appropriate to perfect the security interests of the Secured Party under this Agreement.  A photographic or other reproduction of this Agreement shall be sufficient as a financing statement or other filing or recording document or instrument for filing or recording in any jurisdiction.

6.4     **Authority of Secured Party**.  Each Grantor acknowledges that the rights and responsibilities of the Secured Party under this Agreement with respect to any action taken by the Secured Party or the exercise or non-exercise by the Secured Party of any option, voting right, request, judgment or other right or remedy provided for herein or resulting or arising out of this Agreement shall, as between the Secured Party, be governed by the Note and by such other agreements with respect thereto as may exist from time to time among them.

## SECTION 7
## SUBORDINATION OF INDEBTEDNESS

7.1     **Subordination of All Guarantor Claims**.  As used herein, the term "**Guarantor Claims**" shall mean all debts and obligations of the Borrowers or any other Grantor to any Grantor, whether such debts and obligations now exist or are hereafter incurred or arise, or whether the obligation of the debtor thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or obligations be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such

debts or obligations may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by. Except for payments permitted by the Note, until the Obligations shall be paid and satisfied in full and the Grantor shall have performed all of its obligations hereunder and under the Note, no Grantor shall receive or collect, directly or indirectly, from any obligor in respect thereof any amount upon the Guarantor Claims.

7.2 **Claims in Bankruptcy**. In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving any Grantor, the Secured Party on behalf of the Secured Party shall have the right to prove their claim in any proceeding, so as to establish their rights hereunder and receive directly from the receiver, trustee or other court custodian, dividends and payments which would otherwise be payable upon Guarantor Claims. Each Grantor hereby assigns such dividends and payments to the Secured Party for the benefit of the Secured Party.

7.3 **Payments Held in Trust**. In the event that notwithstanding Sections 7.1 and 7.2, any Grantor should receive any funds, payments, claims or distributions which are prohibited by such Sections, then it agrees: (a) to hold in trust for the Secured Party an amount equal to the amount of all funds, payments, claims or distributions so received, and (b) that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions except to pay them promptly to the Secured Party, for the benefit of the Secured Party; and each Grantor covenants promptly to pay the same to the Secured Party.

7.4 **Liens Subordinate**. Each Grantor agrees that, until the Obligations are paid in full, any Liens securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any Liens securing payment of the Obligations, regardless of whether such encumbrances in favor of such Grantor, Secured Party presently exist or are hereafter created or attach. Without the prior written consent of the Secured Party, no Grantor, during the period in which any of the Obligations are outstanding, shall (a) exercise or enforce any creditor's right it may have against any debtor in respect of the Guarantor Claims, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceeding (judicial or otherwise, including without limitation the commencement of or joinder in any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any Lien held by it.

7.5 **Notation of Records**. All promissory notes and, upon the request of the Secured Party, all accounts receivable ledgers or other evidence of the Guarantor Claims accepted by or held by any Grantor shall contain a specific written notice thereon that the indebtedness evidenced thereby is subordinated under the terms of this Agreement.

## SECTION 8
## MISCELLANEOUS

8.1 **Amendments in Writing**. None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified without the prior written consent of the Secured Party.

8.2 **Notices**. All notices, requests and demands to or upon the Secured Party or any Grantor hereunder shall be effected in the manner provided for in the Note.

8.3    **No Waiver by Course of Conduct; Cumulative Remedies**.  The Secured Party shall not, by any act (except by a written instrument pursuant to <u>Section 8.1</u>), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default.  No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by the Secured Party of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any future occasion.  The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

8.4    **Successors and Assigns**.  This Agreement shall be binding upon the successors and assigns of each Grantor and shall inure to the benefit of the Secured Party and their successors and assigns; provided that no Grantor may assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of the Secured Party.

8.5    **Set-Off**.  In addition to any rights and remedies of the Secured Party provided by law, the Secured Party shall have the right, without prior notice to any Grantor, any such notice being expressly waived by each Grantor to the extent permitted by applicable law, upon any amount becoming due and payable by any Grantor hereunder (whether at the stated maturity, by acceleration or otherwise) to set off and appropriate and apply against such amount any and all deposits (general or special, time or demand, provisional or final), in any currency, and any other credits, indebtedness or claims, in any currency, in each case whether direct or indirect, absolute or contingent, matured or unmatured, at any time held or owing by the Secured Party or any branch or agency thereof to or for the credit or the account of such Grantor.  The Secured Party agrees promptly to notify the relevant Grantor and (if applicable) the Secured Party after any such setoff and application made by the Secured Party, provided that the failure to give such notice shall not affect the validity of such setoff and application.

8.6    **Counterparts**.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by telecopy), and all of said counterparts taken together shall be deemed to constitute one and the same instrument.  A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrowers and the Secured Party.  Telecopies shall be effective as originals.

8.7    **Severability**.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

8.8    **GOVERNING LAW**.  THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS AND, TO THE EXTENT CONTROLLING, LAWS OF THE UNITED STATES OF AMERICA.

8.9     **Submission To Jurisdiction; Waivers**.  Each Grantor hereby irrevocably and unconditionally:

(a)     submits for itself and its property in any legal action or proceeding relating to this Agreement, or for recognition and enforcement of any other judgment in respect thereof, to the non-exclusive general jurisdiction of the Courts of the State of Texas, the U.S. Federal Courts in such state sitting in the County of Harris, or in the courts of any other jurisdiction where such action or proceeding may be property brought, and appellate courts from any thereof;

(b)     to the fullest extent permitted under applicable law, accepts the jurisdiction of such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

(c)     agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Grantor at its address referred to in Section 3.3 or at such other address of which the Secured Party shall have been notified pursuant thereto;

(d)     agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

(e)     waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section 8.10 any special, exemplary, punitive or consequential damages.

8.10    **Acknowledgments**.  Each Grantor hereby acknowledges that:

(a)     it has been advised by counsel in the negotiation, execution and delivery of this Agreement;

(b)     the Secured Party does not have any fiduciary relationship with or duty to any Grantor arising out of or in connection with this Agreement or the Note, and the relationship between Secured Party, on one hand, and the Grantors, on the other hand, in connection herewith or therewith is solely that of debtor and creditor; and

(c)     no joint venture is created hereby or by the Note or otherwise exists by virtue of the transactions contemplated hereby.

8.11    **WAIVER OF JURY TRIAL**.  EACH GRANTOR AND THE SECURED PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND FOR ANY RELATED COUNTERCLAIM.

8.12    **Section Headings**.  The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

8.13   **Additional Grantors**.  Each additional party that shall from time to time become a party to this Agreement shall become a Grantor for all purposes of this Agreement upon execution and delivery by such Subsidiary of an Assumption Agreement in the form of <u>Annex I</u> hereto.

8.14   **Releases; Continuing Agreement**.

(a)   At such time as the Obligations shall have been paid in full, the Collateral shall be released from the Liens created hereby, and this Agreement and all obligations (other than those expressly stated to survive such payment in full) of the Secured Party and each Grantor hereunder shall terminate, all without delivery of any instrument or performance of any act by any party, and all rights to the Collateral shall revert to the Grantors.  At the request and sole expense of any Grantor following any such termination, the Secured Party shall deliver to such Grantor any Collateral held by the Secured Party hereunder, and execute and deliver to such Grantor such documents as such Grantor shall reasonably request to evidence such termination.

(b)   If any of the Collateral shall be sold, assigned, transferred or otherwise disposed of by any Grantor, or if all the capital stock of a Grantor shall be sold, transferred or otherwise disposed of and  its obligations hereunder shall have been released pursuant to the next sentence of this <u>Section 8.14(b)</u>, in either case in a transaction permitted by the Note, then the Secured Party, at the request and sole expense of such Grantor, shall execute and deliver to such Grantor all releases or other documents reasonably necessary or desirable for the release of the Liens created hereby on such Collateral.

(c)   Except as may be expressly applicable pursuant to Section 9.620 and Section 9.622 of the Code, no action taken or omission to act by the Secured Party hereunder, including, without limitation, any exercise of voting or consensual rights or any other action taken or inaction, shall be deemed to constitute a retention of the Collateral in satisfaction of the Obligations or otherwise to be in full satisfaction of the Obligations, and the Obligations shall remain in full force and effect, until the Secured Party shall have applied payments (including, without limitation, collections from Collateral) towards the Obligations in the full amount then outstanding or until such subsequent time as is hereinafter provided in this <u>Section 8.14</u>.

8.15   **Acceptance**.  Each Grantor hereby expressly waives notice of acceptance of this Agreement, acceptance on the part of the Secured Party being conclusively presumed by their request for this Agreement and delivery of the same to the Secured Party.

8.16   **Reinstatement**.  The provisions of this Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against any Grantor for liquidation or reorganization, should any Grantor become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any part of any Grantor's assets or should any other financial impairment occur, and shall continue to be effective or be reinstated, as the case may be, if at any time payment or performance of the Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned to any obligee of the Obligations, whether as a "voidable preference", "fraudulent conveyance", or otherwise, all as though such payment or performance had not been made.  In the event that any payment, or any part thereof, is rescinded, reduced, restored, or

returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

[Signature Page to Follow]

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

**INDUSTRIAL MINERALS GROUP, LLC**

By: _____

Name: Hunter Hobson
Title:   President

**KOPPER GLO MINING, LLC**

By: _____

Name: Hunter Hobson
Title:   President

## **SCHEDULE 1**

FILINGS AND OTHER ACTIONS
REQUIRED TO PERFECT SECURITY INTERESTS

<u>Uniform Commercial Code Filings</u>

| State | Office |
|-------|--------|
| Delaware | Secretary of State's Office |

<u>Other Actions</u>

NONE

## **SCHEDULE 2**

### LOCATION OF JURISDICTION OF ORGANIZATION
### AND CHIEF EXECUTIVE OFFICE

| Grantor | Jurisdiction of Organization[1] | Organizational ID # | Federal Tax ID# | Chief Executive Office |
|---|---|---|---|---|
| Industrial Mining Group, LLC | Delaware | 6747734 | | 200 Prosperity Road Knoxville, Tennessee 37923-4718 |
| Kopper Glo Mining, LLC | Delaware | 4658762 | | 200 Prosperity Road Knoxville, Tennessee 37923-4718 |

---

[1] Not including Jurisdiction of Authority to Transact Business

Schedule 2-1

ASSUMPTION AGREEMENT, dated as of _____, 200__, by _____, a _____ (the "**Additional Grantor**"), in favor of **BLUE TARPON CAPITAL, LLC**, a Texas limited liability company, as lender (in such capacity, the "**Secured Party**"). All capitalized terms not defined herein shall have the meaning ascribed to them in the Note.

## W I T N E S S E T H:

WHEREAS, **INDUSTRIAL MINERALS GROUP, LLC**, a Delaware limited liability company (the "**Parent**"), **KOPPER GLO MINING, LLC**, a Delaware limited liability company and wholly owned subsidiary of Parent ("**Subsidiary**" and together with Parent, the "**Borrowers**") and the Secured Party have entered into a promissory note dated as of March 13, 2018 (as amended, supplemented or otherwise modified from time to time, the "**Note**"); and

WHEREAS, in connection with the Note, the Borrowers have entered into the Security Agreement, dated as of March 13, 2018 (as amended, supplemented or otherwise modified from time to time, the "**Security Agreement**") in favor of the Secured Party for the benefit of the Secured Party; and

WHEREAS, the Additional Grantor has agreed to execute and deliver this Assumption Agreement in order to become a party to the Security Agreement.

NOW, THEREFORE, IT IS AGREED:

1. **Security Agreement**. By executing and delivering this Assumption Agreement, the Additional Grantor, as provided in Section 8.13 of the Security Agreement, hereby becomes a party to the Security Agreement as a Grantor thereunder with the same force and effect as if originally named therein as a Grantor and, without limiting the generality of the foregoing, hereby expressly assumes all obligations and liabilities of a Grantor thereunder. The information set forth in Annex l-A hereto is hereby added to the information set forth in Schedules_____* to the Security Agreement. The Additional Grantor hereby represents and warrants that each of the representations and warranties contained in Section 3 of the Security Agreement is, as to itself, true and correct on and as the date hereof (after giving effect to this Assumption Agreement) as if made on and as of such date.

2. **GOVERNING LAW**. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS AND TO THE EXTENT CONTROLLING, LAWS OF THE UNITED STATES OF AMERICA.

IN WITNESS WHEREOF, the undersigned has caused this Assumption Agreement to be duly executed and delivered as of the date first above written.

[ADDITIONAL GRANTOR]

---

* Refer to each Schedule which needs to be supplemented.

By: _____

Name: _____

Title: _____