# EXHIBIT C

## AMENDED AND RESTATED
## SENIOR SECURED PROMISSORY NOTE

Up to $4,350,000.00                                                                                   October 9, 2018

**WHEREAS,** Blue Tarpon Capital, LLC, a Texas limited liability company (the "Lender"), Industrial Mineral Group, LLC, a Delaware limited liability company ("Parent") and Kopper Glo Mining, LLC, a Delaware limited liability company and wholly owned subsidiary of Parent ("Subsidiary" and together with Parent, each, a "Borrower" and collectively, "Borrower"), entered into a Senior Secured Promissory Note dated March 13, 2018, in an aggregate principal amount not to exceed $2,500,000 (the "Original Note); and

**WHEREAS**, as of the Amendment Effective Date, as defined below, the Lender has advanced the full $2,500,000 of permitted advances under the Original Note; and

**WHEREAS**, Lender and Borrower have agreed to increase the aggregate principal amount permitted to be borrowed under the Original Note to $4,350,000; and

**WHEREAS**, effective as of October 9, 2018 (the "Amendment Effective Date"), the Lender and Borrower now desire to amend and restate the Original Note in its entirety.

**NOW THEREFORE**, the Lender and Borrower hereby agree as follows.

**FOR VALUE RECEIVED** and intending to be legally bound hereby, on or before the Maturity Date (defined below), Parent and Subsidiary, jointly and severally, promise to pay to the order of the Lender the aggregate principal amount advanced to Borrower by Lender as provided herein, such amount not to exceed the principal sum of up to FOUR MILLION THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($4,350,000.00), together with accrued, unpaid interest thereon at the rate of interest set forth herein and any unpaid costs and expenses payable hereunder.

The "Maturity Date" means the earliest to occur of (i) March 31, 2021; (ii) the acquisition of a Borrower by means of any transaction or series of related transactions (including, without limitation, any equity sale, merger, consolidation or other form of reorganization in which outstanding membership interests of a Borrower are exchanged for securities or other consideration issued, or caused to be issued, by the acquiring entity or its subsidiary), or a sale or exclusive licensing of all or substantially all of a Borrower's assets; or (iii) when, upon or after the occurrence and during the continuation of an Event of Default (defined below), such amounts are declared due and payable by Lender or made automatically due and payable in accordance with the terms of this Note.

**A.**     **Terms of Note**.

        1.     **Advance of Loan.**

                (i)     Principal Advances. The principal amount of this Note represents a revolving credit to the Borrower without the necessity of execution of any

other instrument; provided, that Lender shall have no obligation to make any advance of principal under this Note on or after March 31, 2019 ("Revolver Termination Date"). Subject to the forgoing and the satisfaction in each instance by the Borrower of the conditions set forth in Section B below, Borrower may request prior to the Revolver Termination Date advances of principal under this Note on a revolving basis and may borrow, pay down and reborrow, up to the maximum available principal amount of $4,350,000.00. Each advance request must be delivered in writing to Lender, and must include a detailed listing of all expenses or other items reasonably required, which shall be in form and substance reasonably satisfactory to Lender, establishing to the Lender's sole satisfaction and in its sole discretion those amounts for which the advance is being drawn ("Eligible Expenses").

(ii) Each advance of principal made pursuant to paragraph (i) above is a "Loan", and collectively all such advances are the "Loans". The Loans made pursuant to this Note and all payments made hereunder shall be recorded by Lender on its books and records, provided, that the failure to so record any Loan, prepayment or payment shall not limit or otherwise affect the obligation of Borrower to repay any amounts due hereunder.

2. **Interest Rate**. The principal amount outstanding under this Note shall bear interest at a rate per annum equal to fifteen percent (15.0%). Commencing on the Maturity Date or such earlier date as all principal owing hereunder becomes due and payable, the principal amount outstanding under this Note shall bear interest at a rate per annum equal to the lower of (i) twenty percent (20.0%) and (ii) the Highest Lawful Rate (as defined below). Interest on this Note shall be calculated at a daily rate based on a year of 365 or 366 days, as the case may be, with the daily rate so determined being applied for the actual number of days elapsed, provided that in no event shall the amount or rate of interest payable hereunder exceed that calculated or constituting the Highest Lawful Rate.

3. **Payments of Principal and Interest**.

(i) Interest Payments. Interest under this Note shall accrue and shall be payable on the last day of each calendar month until the Revolver Termination Date. Thereafter interest on this Note shall be payable on a quarterly basis along with the payments of principal as set forth in clause (ii) below.

(ii) Principal Payments. On the Revolver Termination Date the Lender shall cause to be prepared and sent to Borrower a straight-line 2 year amortization schedule for quarterly payments with respect to the then outstanding aggregate principal amount of this Note ("Amortizing Principal") and Borrower shall pay on the last day of each calendar quarter thereafter, commencing on June 30, 2019 and continuing until the earlier of the Maturity Date and Borrower's payment in full of the amounts owing

2

with respect to the Loans, the amount reflected on such amortization schedule.

 (iii) <u>Mandatory Principal Prepayments</u>. Upon Borrower's receipt of any Special Proceeds (defined below), Borrower shall make a mandatory principal prepayment equal to 100% of the amount of such Special Proceeds. Each such mandatory principal prepayment shall be made within three business days of Borrower's receipt of the Special Proceeds. "<u>Special Proceeds</u>" means net proceeds arising from any of the following: (a) the sale, lease, license or other transfer of any assets of Borrower or any of its subsidiaries other than in the ordinary course of business (other than a sale or license of all or substantially all of the Borrower's assets, which transaction would trigger the Maturity Date); (b) the sale of any equity security of Borrower or any of its subsidiaries (or any option, warrant or other instrument exercisable for or convertible into any equity security of Borrower or any of its subsidiaries); (c) the incurrence or issuance of any indebtedness by Borrower or any of its subsidiaries other than equipment leasing and financing arrangements and accounts payable, in each case, incurred in the ordinary course of business; or (d) insurance proceeds or condemnation awards paid to Borrower or any of its subsidiaries by reason of theft, physical damage, taking or similar event with respect to Borrower's assets to the extent not used to replace, repair or rebuild any of such assets.

 (iv) <u>Payment in Full on Maturity Date</u>. All outstanding principal and accrued but unpaid interest under this Note shall become immediately due and payable on the Maturity Date.

 (v) <u>Voluntary Principal Prepayments</u>. The Borrower may prepay all or any outstanding amounts under this Note at any time and will not be assessed any penalties on such prepayment.

4. **Payments Terms**. All payments made hereunder shall be made in immediately available funds and in lawful currency of the United States of America.

5. **Application of Payments**. All payments received on this Note shall be applied first to the Lender's fees, costs, and expenses which the Borrower is obligated to pay pursuant to the terms hereof, then to accrued and unpaid interest, and then to principal.

B. <u>**Conditions to Loan.**</u> The Lender shall not be obligated to make any Loan until the Borrower shall have satisfied each of the following conditions (or any such conditions not satisfied shall have been waived by the Lender):

1. **Loan Documents.** The Borrower shall have duly authorized, executed and delivered to the Lender, this Note and shall have authorized, executed and delivered to the Lender the Security Agreement (the "<u>Security Agreement</u>") and

3

Pledge and Security Agreement (the "Pledge Agreement") as security for the payment of this Note in form and substance reasonably satisfactory to the Lender and each of Keith Dyke and Hunter Hobson shall have authorized, executed and delivered to Lender a Conditional Agreement ("Founder Agreements") and Pledge and Security Agreement (the "Founder Pledge Agreements" and together with the Security Agreement, the Pledge and Security Agreement and the Founder Agreements, the "Security Documents" and together with the Note, the "Loan Documents") as security for the payment of this Note in form and substance reasonably satisfactory to the Lender.

2. **Corporate Documents.** The Lender shall have received a certificate of the Secretary or an Assistant Secretary of the Borrower setting forth (i) resolutions of its managers and members with respect to the authorization of the Borrower to execute and deliver this Note or the Security Documents, as applicable, and to enter into the transactions contemplated in those documents, (ii) the officers of the Borrower (y) who are authorized to sign such documents to which the Borrower is a party and (z) who will, until replaced by another officer or officers duly authorized for that purpose, act as its representative for the purposes of signing documents and giving notices and other communications in connection with this Note and the transactions contemplated hereby, and (iii) the certificate of formation and limited liability company agreement of the Borrower, certified as being true and complete. The Lender may conclusively rely on such certificate until it receives notice in writing from the Borrower to the contrary.

3. **Existence.** The Lender shall have received certificates with respect to the existence and compliance of the Borrower from the appropriate governmental authorities in each of their respective jurisdictions of formation.

4. **Representations and Warranties.** The representations and warranties of the Borrower contained in this Note and the Security Documents, shall be true and correct in all material respects as of the date of the proposed Loan.

5. **Payments.** The Borrower shall have paid to the Lender all fees and other amounts (if any) due to the Lender on or before the date of the proposed Loan.

6. **No Event of Default.** No default or Event of Default shall have occurred and be continuing.

7. **No Material Adverse Event.** No circumstance or event that, individually or collectively with other circumstances or events, could reasonably be expected to have a Material Adverse Effect (as defined below) shall have occurred.

C. **Representations and Warranties.** The Borrowers, jointly and severally, represent and warrant to the Lender as follows:

1. **Borrower Authority.** The Borrower has the full and requisite power and authority to enter into and perform its obligations under this Note. The Borrower (i) is duly organized, validly existing and in good standing under the laws of

4

Delaware, (ii) has all requisite power and authority to own its properties and carry on its business as now being conducted and (iii) is qualified to do business in all jurisdictions where the failure to so qualify might reasonably be expected to have a Material Adverse Effect. "Material Adverse Effect" means a material adverse effect on (a) the business, operations, property or condition (financial or otherwise) of the Borrower, (b) the ability of Borrower to pay its obligations under this Note or (c) the validity or enforceability of this Note or the Security Documents, or the rights or remedies of the Lender hereunder or thereunder.

2. **Status of Note.** This Note has been duly authorized, executed and delivered by the Borrower and constitutes the legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting the enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

3. **Status of the Security Documents.** The Security Documents have been duly authorized, executed and delivered by the Borrower and constitute the legal, valid and binding obligations of the Borrower, enforceable against the Borrower in accordance with their terms except (i) as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application affecting the enforcement of creditors' rights generally, and (ii) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

4. **No Violation or Breach.** The execution, delivery and performance by the Borrower of this Note and the Security Documents will not violate or conflict with the certificate of formation and limited liability company agreement of the Borrower or any law, rule or regulation or any order, writ, injunction or decree of any court, governmental authority or arbitrator, and do not and will not violate, result in a breach of, or constitute a default under, or result in the imposition of any lien upon any of the revenues or assets of the Borrower pursuant to the provisions of any indenture, mortgage, deed of trust, security agreement, franchise, permit license or other instrument or agreement by which the Borrower or any of its respective properties is bound.

5. **Approvals.** No authorization, approval or consent of, and no filing or registration with, any court or governmental authority is or will be necessary for the execution, delivery or performance by the Borrower of this Note or the Security Documents or for the validity or enforceability hereof or thereof.

6. **Taxes.** The Parent has filed all national, state and local tax returns and other reports required to be filed by it and has paid or made adequate provision for payment of all such taxes, assessments and other governmental charges, except for such tax returns and taxes which if not filed or paid, as the case may be, would not in the aggregate have a Material Adverse Effect. No taxes, fees or charges

5

(including stamp duty) are payable (either by direct assessment or withholding) to any government or other taxing authority in respect of this Note or the Security Documents.

7. **Litigation; Claims.** There is no claim, loss, contingency, litigation or proceeding, pending, or to the knowledge of the Borrower, threatened or imminent against or otherwise affecting the Borrower that might reasonably be expected to result in a Material Adverse Effect.

8. **Use of Loan Proceeds**. The proceeds of the Loans shall be used only for Eligible Expenses. The Borrower is not engaged principally, or as one of its material activities, in the business of extending credit for the purpose, whether immediate, incidental or ultimate, of buying or carrying margin stock (within the meaning of Regulation T, U or X of the Board of Governors of the Federal Reserve). No part of the proceeds of any Loan will be used for any purpose which violates the provisions of Regulations T, U or X of the Board.

9. **Solvency**. After giving effect to the Loans contemplated hereby, (a) the aggregate assets (after giving effect to amounts that could reasonably be received by reason of indemnity, offset, insurance or any similar arrangement), at a fair valuation, of the Borrower, taken as a whole, will exceed the aggregate debt of the Borrower, as such debt becomes absolute and matures, (b) the Borrower will not have incurred or intended to incur, and does not believe that it will incur, debt beyond its ability to pay such debt (after taking into account the timing and amounts of cash to be received by the Borrower and the amounts to be payable on or in respect of its liabilities, and giving effect to amounts that could reasonably be received by reason of indemnity, offset, insurance or any similar arrangement) as such debt becomes absolute and matures and (c) the Borrower will not have (and has no reason to believe that it will have thereafter) unreasonably small capital for the conduct of its business. Borrower has no indebtedness other than indebtedness in connection with the Permitted Liens and accounts payable incurred in the ordinary course of business.

D. **Affirmative Covenants.** Each Borrower covenants and agrees that, as long as any obligations of the Borrower under this Note remain outstanding, the Borrower will perform and observe the covenants set forth below, unless the Lender shall otherwise consent in writing:

1. **Inspection.** Upon reasonable prior written notice and at reasonable times, the Borrower will permit representatives of the Lender to examine and make copies of the books and records of, and visit and inspect the properties and assets of Borrower and to discuss the business, operations and financial condition of any such persons with their respective officers and employees.

2. **Insurance.** The Borrower will maintain with financially sound and reputable insurance companies workmen's compensation insurance, liability insurance and insurance on its property, assets and business, all at least in such amounts and

6

against such risks as are usually insured against by companies engaged in similar businesses. Upon the written request of the Lender, the Borrower will deliver to the Lender copies of, or certificates evidencing, all of its insurance policies.

3. **Taxes and Claims.** The Borrower will pay or discharge, at or before maturity or before becoming delinquent (a) all taxes, levies, assessments and governmental charges imposed on it or its income or profits or any of its property and (b) all lawful claims for labor, material and supplies, which, if unpaid, might become a lien upon any of its property; provided, however, that the Borrower shall not be required to pay or discharge any tax, levy, assessment or governmental charge which is being contested in good faith by appropriate proceedings diligently pursued and for which adequate reserves have been established to the extent (if any) required by GAAP or taxes the non-payment of which would not, in the aggregate, have a Material Adverse Effect. As used in this Note, "GAAP" means generally accepted accounting principles in the United States of America consistently applied.

4. **Reporting Requirements**. Borrower shall deliver the following to Lender: (a) annual unaudited financial statements of Borrower within 120 days of fiscal year end; (b) monthly unaudited financial statements and certificate of no default due within 25 days of months' end; and (c) such other reports and information reasonably required by Lender.

5. **Notice Requirements**. Borrower shall notify Lender promptly and in writing of any of the following: (a) an event or circumstance that causes, or could reasonably be expected to cause, a Material Adverse Effect; (b) any Event of Default; and (c) the receipt of any Special Proceeds.

6. **Maintenance of Property and Assets.** Borrower and each of its subsidiaries shall maintain their property, plant and equipment in good repair and working condition.

7. **Maintenance of Good Standing.** Borrower shall maintain at all times the good standing of Borrower and each of its subsidiaries with all corporate and state tax authorities to which any such entity is subject.

E. **Negative Covenants.** Each Borrower covenants and agrees that, as long as any obligations of the Borrower under this Note remain outstanding, Borrower will perform and observe the covenants set forth below:

1. **Debt; Guarantees.** The Borrower and its subsidiaries shall not (i) incur any debt for borrowed money; or (ii) guarantee, act as surety or otherwise become obligated for the debt of any person or entity.

2. **Liens.** The Borrower shall not permit any mortgage, pledge, assignment, security interest in or lien or encumbrance upon any of the assets of the Borrower or any subsidiary of the Borrower (except in favor of the Lender), other than Permitted Liens. As used in this Note, "Permitted Liens" means (a) liens for taxes and other

7
Case 3:20-cv-00334-DCLC-DCP   Document 1-3   Filed 07/30/20   Page 8 of 16   PageID #: 60

statutory liens, landlord's liens and similar liens arising by operation of law so long as the obligations secured thereby are not past due or are being contested in good faith by appropriate legal proceedings and the proceedings contesting such obligations have the effect of preventing the forfeiture or sale of the property subject to such lien; (b) liens for deposits made in the ordinary course of business in connection with workers' compensation, unemployment insurance, social security and similar laws; (c) attachment, judgment and other similar non-tax liens arising in connection with court proceedings but only if and for so long as (i) the execution or enforcement of such liens is and continues to be effectively stayed on appeal, (ii) the validity and/or amount of the claims secured thereby are being actively contested in good faith by appropriate legal proceedings and (iii) such liens do not, in the aggregate, materially detract from the value of the assets of the person whose assets are subject to such lien or materially impair the use thereof in the operation of such person's business; (d) liens in the nature of easements or other similar encumbrances or restrictions (not securing debt) on the use of a person's properties, so long as such liens do not materially impair such person's use of such property; (e) liens upon any equipment acquired or held by the Borrower or any of its subsidiaries to secure the purchase price of such equipment or indebtedness incurred solely for the purpose of financing the acquisition of such equipment, so long as such lien extends only to the equipment financed, and any accessions, replacements, substitutions and proceeds (including insurance proceeds) thereof or thereto and (f) leases or subleases and licenses or sublicenses entered into in the ordinary course of the Company's business.

3. **Restricted Payments.** The Borrower will not declare or pay any dividends or distributions (including tax distributions but excluding distributions solely of membership interests) or make any other payment (in cash, property, or obligations) on account of its membership interests, or redeem, purchase, retire, or otherwise acquire any of its membership interests, or set apart any money for a sinking or other analogous fund for any dividend or other distribution on its membership interests or for any redemption, purchase, retirement, or other acquisition of any of its membership interests; *provided*, that so long as no Event of Default has occurred and is continuing, Borrower may make distributions to its members in an amount necessary to pay the members' federal and/or tax state income tax obligations resulting from Borrower's pass-through taxable income pursuant to and in accordance with Borrower's limited liability company agreement.

4. **Change of Control**. The Borrower shall not, without the prior written consent of Lender, enter into any agreement related to the acquisition or change of control of the Borrower by means of any transaction or series of related transactions (including, without limitation, any equity sale, merger, consolidation or other form of reorganization in which outstanding shares of Borrower are exchanged for securities or other consideration issued, or caused to be issued, by the acquiring entity or its subsidiary), or any sale or exclusive licensing of all or substantially all of Borrower's assets.

5. **Repayment of Indebtedness.** The Borrower will not prepay any amount of principal due under any of the Borrower's existing indebtedness for borrowed money during the term of this Note without the prior written consent of the Lender.

6. **Other Transactions.** Neither the Borrower nor any of its subsidiaries shall do either of the following without obtaining the prior written consent of Lender: (a) enter into any transaction with any member of Borrower (or any affiliate thereof) where the transaction value exceeds (or is reasonably likely to exceed) $10,000; or (b) incur more than $1,800,000 in capital expenditures in any fiscal year.

F. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:

1. **Payments.** Failure of the Borrower to pay (i) the principal of this Note or (ii) interest on this Note when due and such failure to pay interest shall continue for a period of five (5) days.

2. **Failure to Perform.** Failure by the Borrower to perform or observe any covenant, term or agreement set forth in this Note or the Security Documents; provided that with respect to any covenant, term or agreement set forth in clause E, such failure is not cured within fifteen (15) days after the earlier to occur of (i) written notice thereof from Lender to the Borrower, or (ii) receipt of actual notice thereof by a responsible officer of the Borrower.

3. **Voluntary Proceeding.** The Borrower shall commence a voluntary proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or a substantial part of its property or shall consent to any such relief or to the appointment of or taking possession by any such official in an involuntary case or other proceeding commenced against it or shall make a general assignment for the benefit of creditors or shall generally fail to pay its debts as they become due or shall take any company action to authorize any of the foregoing.

4. **Involuntary Proceeding.** An involuntary proceeding shall be commenced against the Borrower seeking liquidation, reorganization or other relief with respect to its or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or a substantial part of its property and such involuntary proceeding shall remain undismissed and unstayed for a period of sixty (60) days.

G. **Remedies.**

1. **Acceleration.** If any Event of Default shall occur, then or at any time thereafter

while such Event of Default shall continue, the Lender may declare all amounts outstanding under this Note to be immediately due and payable, **without notice of intent to accelerate, notice of acceleration,** notice of nonpayment, protest, presentment, dishonor, demand, or any other notices all of which are hereby expressly waived by the Borrower.

2. **Generally**. Upon and following an Event of Default, and so long as same shall be continuing, Lender, at its option, may exercise any and all rights and remedies it has under this Note and the Security Documents and under applicable law. Upon and following an Event of Default, and so long as same shall be continuing, Lender may proceed to protect and enforce its rights under this Note, the Security Documents and/or under applicable law by action at law, in equity, or other appropriate proceeding, including, without limitation, an action for specific performance to enforce or aid the enforcement of any provision contained herein or in the Security Documents.

3. **Remedies Cumulative; No Waiver**. The remedies hereunder, under this Note and under the Security Documents are cumulative and concurrent, and are not exclusive of any other remedies available to Lender. No failure or delay on the part of Lender in the exercise of any right, power, remedy or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, remedy or privilege preclude any other or further exercise thereof, or the exercise of any other right, power, remedy or privilege.

H. **Miscellaneous.**

1. **Governing Law**. This Note shall be construed in accordance with and governed by the substantive laws of the State of Texas. As used in this Note, a "business day" means any day on which commercial banks are not authorized or required by applicable law to close in Houston, Texas.

2. **Integration**. This Note and the Security Documents constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

3. **Successors and Assigns**. This Note shall be binding upon the Borrower, its respective successors and permitted assigns; provided, however, that the Borrower may not assign its rights or obligations hereunder or any interest herein without the prior written consent of the Lender, and any such assignment or attempted assignment by the Borrower without such consent shall be null and void and of no effect with respect to the Lender.

4. **Severability**. The illegality or unenforceability of any provision of this Note or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Note or any instrument or agreement required hereunder.

5.  **Headings**. Headings, subheadings and captions have been included herein for convenience only and shall not be considered in interpreting the meaning or intent of this Note.

6.  **Expenses of the Lender.** The Borrower agrees to pay all out-of-pocket expenses of the Lender associated with (i) the documentation, negotiation and preparation of this Note and all related documents; and (ii) in the event Lender is the prevailing party, the enforcement of this Note and the Security Documents (including the reasonable fees and disbursements of the Lender's legal counsel). The Borrower will pay such expenses promptly upon receipt of an invoice therefor setting forth such expense in reasonable detail.

7.  **Interest Rate Limitation**. It is the intention of the parties hereto that the Lender shall conform strictly to usury laws applicable to it. Accordingly, if the transactions contemplated hereby would be usurious as to the Lender under laws applicable to it (including the laws of the United States of America and the State of Texas or any other jurisdiction whose laws may be mandatorily applicable to the Lender notwithstanding the other provisions of this Agreement), then, in that event, notwithstanding anything to the contrary in this Note or any agreement entered into in connection with or as security for this Note, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under law applicable to the Lender that is contracted for, taken, reserved, charged or received by the Lender under this Note or otherwise in connection with this Note shall under no circumstances exceed the maximum amount allowed by such applicable law, and any excess shall be canceled automatically and if theretofore paid shall be credited by the Lender on the principal amount of this Note (or, to the extent that the principal amount of this Note shall have been or would thereby be paid in full, refunded by the Lender to the Borrower); and (ii) in the event that the maturity of this Note is accelerated by reason of an election of the Lender resulting from any default under this Note or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest under law applicable to the Lender may never include more than the maximum amount allowed by such applicable law, and excess interest, if any, provided for in this Note or otherwise shall be canceled automatically by the Lender as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited by the Lender on the principal amount of this Note (or, to the extent that the principal amount of this Note shall have been or would thereby be paid in full, refunded by the Lender to the Borrower). All sums paid or agreed to be paid to the Lender for the use, forbearance or detention of sums due hereunder shall, to the extent permitted by law applicable to the Lender, be amortized, prorated, allocated and spread throughout the stated term of this Note until payment in full so that the rate or amount of interest on account of this Note does not exceed the maximum amount allowed by such applicable law (the "Highest Lawful Rate"). If at any time and from time to time (A) the amount of interest payable to the Lender on any date shall be computed at the Highest Lawful Rate applicable to the Lender pursuant to this Section H(7) and (B) in respect of any subsequent interest computation period the amount of interest otherwise payable to the

Lender would be less than the amount of interest payable to the Lender computed at the Highest Lawful Rate applicable to the Lender, then the amount of interest payable to the Lender in respect of such subsequent interest computation period shall continue to be computed at the Highest Lawful Rate applicable to the Lender until the total amount of interest payable to the Lender shall equal the total amount of interest which would have been payable to the Lender if the total amount of interest had been computed without giving effect to this Section H(7). To the extent that Chapter 303 of the Texas Finance Code is relevant for the purpose of determining the Highest Lawful Rate applicable to the Lender, the Lender elects to determine the applicable rate ceiling under such Chapter by the weekly ceiling from time to time in effect. Chapter 346 of the Texas Finance Code does not apply to the Lender's obligations hereunder.

8. **Notices.** All notices required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, if not, then on the next business day, (c) five days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the Lender at the address on the signature page below, and to Borrower at the addresses on the signature page below or at such other addresses as the Company or Borrower may designate by 10 days advance written notice to the other parties hereto.

9. **USA Patriot Act Notice**. The Lender hereby notifies the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "Act"), it is required to obtain, verify and record information that identifies the Borrower, which information includes the name and address of the Borrower and other information that will allow the Lender to identify the Borrower in accordance with the Act.

10. **Board Observer.** So long as any amounts remain outstanding under this Note, Borrower shall have the right to designate an observer to the Board of Managers of Borrower (or to participate in all equivalent proceedings among members of Borrower). Such observer shall receive notice of all Board (or member) proceedings (including actions or proceedings by written consent) contemporaneously with all Board members (or members), and shall have the right to attend all physical and telephonic meetings of same.

11. **Confidentiality.** The terms and conditions of this Note and the Security Documents are confidential, and neither party shall disclose same to any third party without the prior written consent of the other party, except that each party may disclose the terms and conditions described in this summary of terms to their respective officers, directors, managers, members, employees, attorneys and other advisers or prospective lenders or acquirers of Borrower, provided that such persons agree to the confidentiality restrictions contained in this summary of

terms. If any party determines that it is required by law to disclose information regarding this summary of terms, it will, a reasonable time before making any such disclosure or filing, consult with each other party regarding such disclosure or filing and seek confidential treatment for such portions of the disclosure or filing as may be reasonably requested by the other party.

12. **Actions Involving this Note**. If this Note is referred to any attorney for collection and the Lender is the prevailing party in such action, the Borrower agrees to pay all reasonable costs of collection, including court costs and reasonable attorneys' fees and costs. **EACH OF THE BORROWER AND THE LENDER HEREBY IRREVOCABLY WAIVE ITS RIGHT TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF THE LOANS EVIDENCED BY THIS NOTE AND THE TRANSACTIONS CONTEMPLATED HEREUNDER.**

[signature page follows]

IN WITNESS WHEREOF, each Borrower has caused this Note to be duly executed and delivered to the Lender, as of the date first above written.

INDUSTRIAL MINERALS GROUP, LLC

By: /s/ Hunter Hobson
Name: Hunter Hobson
Title: President

Address for notices:

144E Marketplace Blvd.
Knoxville, TN 37922

Attn: Hunter Hobson
Email: hhobson@kopperglo.com
Tel: 865-247-4278
Fax: 865-247-4054

KOPPER GLO MINING, LLC

By: /s/ Hunter Hobson
Name: Hunter Hobson
Title: President

Address for notices:

144E Marketplace Blvd.
Knoxville, TN 37922

Attn: Hunter Hobson
Email: hhobson@kopperglo.com
Tel: 865-247-4278
Fax: 865-247-4054

**LENDER:**

**BLUE TARPON CAPITAL, LLC**

By: _____
Name: Corbin J. Roberston, III
Title: President

Address for notices:

_____
_____
_____

Email: _____
Tel: _____
Fax: _____