# EXHIBIT E

# AMENDMENT NO. 1 TO THE SECURITY AGREEMENT

This AMENDMENT No. 1 ("**Amendment No. 1**") to the Security Agreement is effective as of March 19, 2020 and is made by and between Industrial Minerals Group, LLC, a Delaware limited liability company (the "**Parent**") and Kopper Glo Mining, LLC, a Delaware limited liability company and wholly owned subsidiary of the Parent ("**Subsidiary**" and together with the Parent, the "**Borrower**" and together with any other entity that may become a party hereto as provided herein, the "**Grantors**"), in favor of Blue Tarpon Capital, LLC, a Texas limited liability company, as lender (the "**Secured Party**").

**WHEREAS**, the Lender and Borrower entered into a Senior Secured Promissory Note dated March 13, 2018 in an aggregate principal amount not to exceed $2,500,000 (the "**Original Note**") and related Security Documents (as defined in the Original Note);

**WHEREAS**, the Lender and Borrower entered into an Amended and Restated Senior Secured Promissory Note dated October 9, 2018 increasing the aggregate principal amount permitted to be borrowed under the Original Note to $4,350,000 (the "**Amended and Restated Note**");

**WHEREAS**, the obligations and amounts due and owing under the Amended and Restated Note continued to be secured pursuant to the Security Documents, (as defined in the Amended and Restated Note), as may be amended from time to time, including but not limited to, the Security Agreement dated as of March 13, 2018 by and between Borrower and Secured Party (the "**Original Security Agreement**");

**WHEREAS**, the Borrower ceased making interest payments as of December 31, 2018 and the Borrower did not make any principal payments as required by the Amended and Restated Note;

**WHEREAS**, the Lender sent a reservation of rights letter to the Borrower on November 13, 2019 (the "**Notice of Reservation of Rights**") outlining various deficiencies and non-compliance items to the Borrower and the parties thereafter commenced negotiations in good faith to cure all defaults and (i) modify the payment terms as set forth in the Amended and Restated Note in order for the Borrower to get back in compliance and to have additional time to repay the Amended and Restated Note in light of the macro headwinds facing the coal industry, (ii) extend the Maturity Date (as defined in the Amended and Restated Note), and (iii) clarify and amend the Collateral as set forth in the Original Security Agreement for good and valuable consideration granted herein to the Borrower;

**WHEREA**S, these negotiations and discussions resulted in the agreement to enter into Amendment No. 1 to the Amended and Restated Note simultaneously with the execution of this Agreement; and

**WHEREAS**, the Borrower acknowledges and agrees that it will derive significant direct and indirect benefit from the extension of the Maturity Date and the modification to the payment schedule for interest and amortization of principal and, in return, has agreed to clarify and amend the scope and extent of the Collateral identified in the Original Security Agreement.

**NOW THEREFORE**, the Lender and Borrower hereby agree as follows:

## SECTION A: DEFINED TERMS NOT OTHERWISE DEFINED IN THE ORIGINAL SECURITY AGREEMENT

Terms not otherwise defined herein shall have the meaning in the Original Security Agreement. The following terms shall have the meanings assigned thereto in the UCC: As-extracted Collateral, Contract, Commercial Tort Claims, Equipment, Fixtures, General Intangibles, Promissory Note and Supporting Obligation.

## SECTION B: AMENDMENT TO THE ORIGINAL SECURITY AGREEMENT

(1) The term "Collateral" as defined in Section 2 of the Original Security Agreement is hereby replaced with the following provision to govern the scope and extent of the lien and security interests of the Secured Party:

    (a) all Accounts;

    (b) all money, cash, currency, and cash equivalents;

    (c) all coal and other minerals severed or extracted from the ground including all As-extracted Collateral (including without limitation all As-extracted Collateral from each of Grantor's present and future operations regardless of whether such interests are presently owned or hereafter acquired);

    (d) all Chattel Paper;

    (e) all Contracts and rights thereof, including, but not limited to (i) (A) all policies of insurance now or hereafter held by or on behalf of such Grantor, including casualty, liability, key man life insurance, business interruption, foreign credit insurance and any title insurance, (B) all proceeds of insurance, and (C) all rights, now or hereafter held by such Grantor to any warranties of any manufacturer or contractor of any other Person, and (ii) all interest rate swap agreements, interest rate cap agreements and interest rate collar agreements, and all other agreements or arrangements designed to protect such Grantor against fluctuations in interest rates or currency exchange rates and all commodity hedge, commodity swap, exchange, forward, future, floor, collar or cap agreements, fixed price agreements and all other agreements or arrangements designed to protect such Grantor against fluctuations in commodity prices;

    (f) all Commercial Tort Claims;

    (g) all copyrights and copyright Licenses;

    (h) all Equipment, including, but not limited to, all present and future automobiles, trucks, truck tractors, trailers, semi-trailers, or other motor vehicles or rolling stock;

(i) all Fixtures;

(j) all General Intangibles;

(k) all governmental approvals, to the extent a security interest may be granted therein; provided that any Governmental Approval that by its terms or by operation of Law would be void, voidable, terminable or revocable if mortgaged, pledged, assigned or otherwise encumbered hereunder is expressly excepted and excluded from the liens and terms of this Agreement, including the grant of security interest in Section 2;

(l) all Inventory;

(m) all Instruments and Promissory Notes;

(n) all Investment Property;

(o) all Letter-of-Credit Rights;

(p) all patents and patent licenses;

(q) all Software;

(r) all Supporting Obligations;

(s) all trademarks and trademark licenses;

(t) one hundred percent (100%) (or, if less, the full amount owned by such Grantor) of the issued and outstanding equity interests owned by such Grantor of each Subsidiary, together with the certificates (or other agreements or instruments), if any, representing such Equity Interests, and all options and other rights, contractual or otherwise, with respect thereto but only to control such interests to the extent necessary to allow Secured Party to receive $1,350,000 at which point the security interest pursuant to this subsection B.1.(t) shall immediately terminate, including, but not limited to, the following:

(i) all shares, securities, membership interests and other equity interests or other property representing a dividend or other distribution (cash or otherwise) on or in respect of any of the pledged shares, or representing a distribution or return of capital upon or in respect of the Pledged Shares, or resulting from a stock split, revision, rearrangements, reclassification or other exchange therefor, and any other dividends, distributions, subscriptions, warrants, cash, securities, instruments, rights, options, profits, income surplus, money, credit, claims,

3

demands or other property (real or personal) issued to or received or receivable by the holder of, or otherwise in respect of, the pledged shares and revenues of any kind or character now or hereafter relating to, accruing or arising under or in respect of the pledged shares; and

   (ii) all equity interests of the successor entity formed by or resulting from such consolidation or merger;

  (u) (i) any and all liens and security interests (together with the documents evidencing such security interests) granted to such Grantor by an obligor to secure such obligor's obligations owing under any Instrument, Promissory Note, Chattel Paper or Contract that is pledged hereunder or with respect to which a security interest in such Grantor's rights in such Instrument, Promissory Note, Chattel Paper or Contract is granted hereunder and (ii) any and all guarantees given by any Person for the benefit of such Grantor which guarantees the obligations of an obligor under any Instrument or Chattel Paper which are pledged hereunder; and

  (v) all books, correspondence, credit files, records, invoices, tapes, cards, computer runs, writings, data bases, information in all forms, paper and documents and other property relating to, used or useful in connection with, evidencing, embodying, incorporating or referring to, any of the foregoing; and to the extent not otherwise included, all substitutions, replacements, products, rents, issues, profits, returns, income and Proceeds of any and all of the foregoing.

## SECTION C: MISCELLANEOUS

(1) **Representations and Warranties**. The representations and warranties in the Original Security Agreement remain true and correct in all respects as of the date of this Amendment No. 1.

(2) **Covenants.** The Grantors hereby ratify and validate the covenants in the Original Security Agreement and agree that the covenants remain in full force and effect, except to the extent modified hereby.

4

**IN WITNESS WHEREOF,** Borrower has caused this Amendment No. 1 to be duly executed and delivered to the Secured Party, as of the date first above written.

**INDUSTRIAL MINERALS GROUP, LLC**

By: _____
Name: HUNTER HOBSON
Title:   Manager

By: _____
Name: KEITH DYKE
Title:   Manager

**KOPPER GLO MINING, LLC**

By: _____
Name: HUNTER HOBSON
Title:   President

By: _____
Name: KEITH DYKE
Title: Vice President

**SECURED PARTY:**

**BLUE TARPON CAPITAL, LLC**

By: _____
Name: CORBIN J. ROBERTSON III
Title:   President

5