# EXHIBIT G

# SECURITY AGREEMENT

made by

INMET MINING, LLC

in favor of

BLUE TARPON CAPITAL, LLC,
as Lender and Secured Party

Dated as of March 19, 2020

# SECURITY AGREEMENT

This SECURITY AGREEMENT, dated as of March 19, 2020, is made by **INMET MINING, LLC**, the "**Borrower**" and, together with any other entity that may become a party hereto as provided herein, the "**Grantor**"), in favor of **BLUE TARPON CAPITAL, LLC**, as lender (the "**Secured Party**").

## WITNESSETH:

**WHEREAS**, the Borrower recently closed on the acquisition (the "**BlackJewel Transaction**") of certain assets of BlackJewel, L.L.C. and its affiliates out of chapter 11 cases in the Southern District of West Virginia;

**WHEREAS**, the Borrower and its secured lender, Black Mountain Marketing and Sales, L.P. ("**Black Mountain**"), requested that the Secured Party consent to the BlackJewel Transaction and permit Black Mountain to take junior liens and security interests in collateral of Borrower's affiliate, Kopper Glo Mining, LLC, as part of Black Mountain's financing arrangements related to the BlackJewel Transaction and the ongoing operations of both Kopper Glo Mining, LLC and Borrower;

**WHEREAS**, Secured Party provided its consent to the BlackJewel Transaction in return for (i) being granted a lien and security interest as set forth herein to secure repayment up to the amount of $1,350,000 (the "**Guaranteed Amount**"), and (ii) Borrower entering into a guaranty agreement (the "**INMET Guaranty**") guaranteeing the obligations (up to the Guaranteed Amount) of Kopper Glo Mining, LLC to Secured Party, as set forth in an Amended and Restated Senior Secured Promissory Note dated October 9, 2018 by and between Secured Party and Kopper Glo Mining, LLC, an affiliate of Borrower;

**WHEREAS**, the Borrower acknowledges and agrees that the BlackJewel Transaction would not have closed absent the consent of the Secured Party and the concessions provided by Secured Party;

**WHEREAS**, the Borrower acknowledges that it has derived and will derive substantial direct and indirect benefit from the consummation of the BlackJewel Transaction and the related financing arrangements with Black Mountain; and

**WHEREAS**, it is a condition precedent to Secured Party's consent to the BlackJewel Transaction that the Grantor shall have executed and delivered this Agreement to the Secured Party for its benefit in order to secure the obligations arising under the INMET Guaranty.

**NOW, THEREFORE**, in consideration of the premises and to induce the Secured Party to consent to the BlackJewel Transaction, Grantor hereby agrees with the Secured Party, for the benefit of the Secured Party, as follows:

# SECTION 1
# DEFINED TERMS

1.1 **Definitions**.

(a) The following terms which are defined in the Code are used herein as so defined: Accounts, As-extracted Collateral, Chattel Paper, Commercial Tort Claims, Contract, Equipment, General Intangibles, Instruments, Inventory, Investment Property, Letter of Credit Rights, Payment Intangibles, Proceeds, Records, Software and Supporting Obligations.

(b) The following terms shall have the following meanings:

"**Agreement**": this Security Agreement, as the same may be amended, supplemented or otherwise modified from time to time.

"**Code**": the Uniform Commercial Code as from time to time in effect in the State of Texas.

"**Collateral**": as defined in Section 2. For the avoidance of doubt, Collateral shall not include Accounts, Inventory or As-extracted Collateral.

"**Intercreditor Agreement**": the intercreditor agreement as contemplated by and to be negotiated and agreed to by the parties as part of the BlackJewel Transaction by and between Black Mountain Marketing and Sales LP, a Delaware limited liability partnership, Blue Tarpon Capital, LLC, a Texas limited liability company and INMET Mining, LLC, a Delaware limited liability company which, among other things, sets forth the relative lien priority of the secured lenders with regard to the Collateral.

"**Obligations**": $1,350,000, as reflected and as set forth in the INMET Guaranty.

"**Permitted Lien**": any lien and security interest granted to acquisition finance parties of Equipment that is properly perfected in accordance with state law and the liens and security interests granted to Black Mountain as part of the BlackJewel Transaction and related financing arrangement.

1.2 **Other Definitional Provisions**.

(a) The words "**hereof**," "**herein**," "**hereto**" and "**hereunder**" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section and Schedule references are to this Agreement unless otherwise specified.

(b) The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(c) Where the context requires, terms relating to the Collateral or any part thereof, when used in relation to a Grantor, shall refer to such Grantor's Collateral or the relevant

3

part thereof.

## SECTION 2
## GRANT OF SECURITY INTEREST

Grantor hereby pledges, assigns and transfers to the Secured Party, and hereby grants to the Secured Party, for the ratable benefit of the Secured Party to secure the obligations arising under the INMET Guaranty, a security interest in, all of the following property now owned or at any time hereafter acquired by such Grantor or in which such Grantor now has or at any time in the future may acquire any right, title or interest (collectively, the "**Collateral**"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations:

(a) all money, cash, currency, and cash equivalents;

(b) all Chattel Paper;

(c) all Contracts and rights thereof, including, but not limited to (i) (A) all policies of insurance now or hereafter held by or on behalf of such Grantor, including casualty, liability, key man life insurance, business interruption, foreign credit insurance and any title insurance, (B) all proceeds of insurance, and (C) all rights, now or hereafter held by such Grantor to any warranties of any manufacturer or contractor of any other Person, and (ii) all interest rate swap agreements, interest rate cap agreements and interest rate collar agreements, and all other agreements or arrangements designed to protect such Grantor against fluctuations in interest rates or currency exchange rates and all commodity hedge, commodity swap, exchange, forward, future, floor, collar or cap agreements, fixed price agreements and all other agreements or arrangements designed to protect such Grantor against fluctuations in commodity prices;

(d) all Commercial Tort Claims;

(e) all copyrights and copyright licenses;

(f) all Equipment, including, but not limited to, all present and future automobiles, trucks, truck tractors, trailers, semi-trailers, or other motor vehicles or rolling stock;

(g) all Fixtures;

(h) all General Intangibles;

(i) all governmental approvals, to the extent a security interest may be granted therein; provided that any Governmental Approval that by its terms or by operation of Law would be void, voidable, terminable or revocable if mortgaged, pledged, assigned or otherwise encumbered hereunder is expressly excepted and excluded from the liens and terms of this Agreement, including the grant of security interest in Section 2;

(j) all Instruments and Promissory Notes;

(k) all Investment Property;

(l) all Letter-of-Credit Rights;

(m) all patents and patent licenses;

(n) all Software;

(o) all Supporting Obligations;

(p) all trademarks and trademark licenses;

(q) one hundred percent (100%) (or, if less, the full amount owned by such Grantor) of the issued and outstanding equity interests owned by such Grantor of each Person, together with the certificates (or other agreements or instruments), if any, representing such equity interests, and all options and other rights, contractual or otherwise, with respect thereto, including, but not limited to, the following:

(i) all shares, securities, membership interests and other equity interests or other property representing a dividend or other distribution (cash or otherwise) on or in respect of any of the pledged shares, or representing a distribution or return of capital upon or in respect of the Pledged Shares, or resulting from a stock split, revision, rearrangements, reclassification or other exchange therefor, and any other dividends, distributions, subscriptions, warrants, cash, securities, instruments, rights, options, profits, income surplus, money, credit, claims, demands or other property (real or personal) issued to or received or receivable by the holder of, or otherwise in respect of, the pledged shares and revenues of any kind or character now or hereafter relating to, accruing or arising under or in respect of the pledged shares; and

(ii) all equity interests of the successor entity formed by or resulting from such consolidation or merger;

(r) (i) any and all liens and security interests (together with the documents evidencing such security interests) granted to such Grantor by an obligor to secure such obligor's obligations owing under any Instrument, Promissory Note, Chattel Paper or Contract that is pledged hereunder or with respect to which a security interest in such Grantor's rights in such Instrument, Promissory Note, Chattel Paper or Contract is granted hereunder and (ii) any and all guarantees given by any Person for the benefit of such Grantor which guarantees the obligations of an obligor under any Instrument or Chattel Paper which are pledged hereunder; and

(s) all books, correspondence, credit files, records, invoices, tapes, cards, computer runs, writings, data bases, information in all forms, paper and documents and other property relating to, used or useful in connection with, evidencing, embodying, incorporating or referring to, any of the foregoing; and to the extent not otherwise included, all substitutions, replacements, products, rents, issues, profits, returns, income and Proceeds of any and all of the foregoing.

## SECTION 3
## REPRESENTATIONS AND WARRANTIES

5

To induce the Secured Party to consent to the BlackJewel Transaction and permit Black Mountain to have junior liens and security interests in the assets of Kopper Glo Mining, LLC, the Grantor hereby represents and warrants to the Secured Party that to the best of their knowledge:

3.1 **Perfected Liens**. The security interests granted pursuant to this Agreement upon completion of the filings and other actions specified on Schedule 1 (which, in the case of all filings and other documents referred to on said Schedule, have been delivered to the Secured Party in completed and duly executed or authorized form) will constitute valid perfected security interests in all of the Collateral in the priority set forth in the Intercreditor Agreement in favor of the Secured Party, for the benefit of the Secured Party, as collateral security for the Obligations, enforceable in accordance with the terms hereof against all creditors of such Grantor and any Persons purporting to purchase any Collateral from such Grantor.

3.2 **Organizational Information**. On the date hereof, Grantor's jurisdiction of incorporation, formation or organization, as applicable, organizational identification number, federal tax identification number and the location of such Grantor's chief executive office or sole place of business are specified on Schedule 2.

3.3 **Solvency**. Grantor (i) is not insolvent as of the date hereof and will not be rendered insolvent as a result of this Agreement, (ii) is not engaged in business or a transaction, or about to engage in a business or a transaction, for which any property or assets remaining with it constitute unreasonably small capital, and (iii) does not intend to incur, or believe it will incur, debts that will be beyond its ability to pay as such debts mature.

## SECTION 4
## COVENANTS

Grantor covenants and agrees with the Secured Party that, from and after the date of this Agreement until the Obligations shall have been paid in full:

4.1 **Maintenance of Perfected Security Interest: Further Documentation**.

(a) Such Grantor shall maintain the security interest created by this Agreement as a perfected security interest and shall defend such security interest against the claims and demands of all persons whomsoever.

(b) Such Grantor will furnish to the Secured Party from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Secured Party may reasonably request, all in reasonable detail.

(c) At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of such Grantor, such Grantor will promptly and duly execute, deliver and/or have recorded with appropriate agencies such further instruments and documents and take such further actions as the Secured Party may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted, including, without limitation, the filing of any financing or continuation statements under the Uniform Commercial Code (or other similar laws) in effect in any jurisdiction with respect to

the security interests created hereby.

4.2 **Changes in Location, Name, etc**. Such Grantor will not, except upon 30 days' prior written notice to the Secured Party and delivery to the Secured Party of all additional executed financing statements and other documents reasonably requested by the Secured Party to maintain the validity, perfection and priority of the security interests provided for herein:

(a) change the location of its chief executive office or sole place of business from that referred to in Section 3.2;

(b) change in jurisdiction or incorporation, formation or organization, as applicable; or

(c) change its name, identity or corporate structure to such an extent that any financing statement filed by the Secured Party in connection with this Agreement would become misleading.

4.3 **Notices**. Such Grantor will advise the Secured Party promptly, in reasonable detail, of any new lien (other than a Permitted Liens) on any of the Collateral which would materially adversely affect the ability of the Secured Party to exercise any of its remedies hereunder.

## SECTION 5
## REMEDIAL PROVISIONS

5.1 **Code and Other Remedies**.

(a) If an Event of Default shall occur and be continuing, the Secured Party may exercise, in addition to all other rights and remedies granted to them in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights and remedies of a secured party under the Code or any other applicable law or otherwise available at law or equity. Without limiting the generality of the foregoing, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below) to or upon any Grantor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, at any exchange, broker's board or office of the Secured Party or elsewhere upon such commercially reasonable terms and conditions as it may deem advisable and at such commercially reasonable prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in any Grantor, which right or equity is hereby waived and released to the fullest extent permitted under applicable law. Grantor further agrees, at the Secured Party's request, to assemble its Collateral and make it available to the Secured Party at places which the Secured Party shall reasonably select, whether at such Grantor's premises or elsewhere. Any such

7

sale or transfer by the Secured Party either to itself or to any other Person shall, to the fullest extent permitted under applicable law, be absolutely free from any claim of right by any Grantor, including any equity or right of redemption, stay or appraisal which such Grantor has or may have under any rule of law, regulation or statute now existing or hereafter adopted. Upon any such sale or transfer, the Secured Party shall have the right to deliver, assign and transfer to the purchaser or transferee thereof the Collateral so sold or transferred. The Secured Party shall apply the net proceeds of any action taken by it pursuant to this Section 5.1 with respect to the Collateral of any Grantor, after deducting all reasonable costs and expenses of every kind incurred in connection therewith or incidental to the care or safekeeping of any of such Collateral or in any way relating to such Collateral or the rights of the Secured Party hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Obligations of such Grantor, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of law, including, without limitation, Section 9.608(a)(1) of the Code, need the Secured Party account for the surplus, if any, to the applicable Grantor. To the extent permitted by applicable law, Grantor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 days before such sale or other disposition.

(b) In the event that the Secured Party elects not to sell the Collateral of any Grantor, the Secured Party retains its rights to dispose of or utilize such Collateral or any part or parts thereof in any manner authorized or permitted by law or in equity, and to apply the proceeds of the same towards payment of the Obligations of such Grantor. Each and every method of disposition of the Collateral described in this Agreement shall constitute disposition in a commercially reasonable manner.

(c) The Secured Party may appoint any Person as agent to perform any act or acts necessary or incident to any sale or transfer of the Collateral.

5.2 **Waiver: Deficiency**. Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of its Collateral are insufficient to pay its Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

5.3 **Non-judicial Enforcement**. The Secured Party may enforce its rights hereunder without prior judicial process or judicial hearing, and to the extent permitted by law, Grantor expressly waives any and all legal rights which might otherwise require the Secured Party to enforce its rights by judicial process.

## SECTION 6
## THE SECURED PARTY

6.1 **Secured Party's Appointment as Attorney-in-Fact etc**.

(a) Grantor hereby irrevocably constitutes and appoints the Secured Party and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in- fact with full irrevocable power and authority in the place and stead of such Grantor and in the name of such Grantor or in its own name, for the purpose of carrying out the terms of this Agreement, to take

8

any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement, and, without limiting the generality of the foregoing, Grantor hereby gives the Secured Party the power and right, on behalf of such Grantor, without notice to or assent by such Grantor, to do any or all of the following:

    (i) pay or discharge taxes and liens levied or placed on or threatened against any of its Collateral, effect any repairs or any insurance called for by the terms of this Agreement and pay all or any part of the premiums therefor and the costs thereof;

    (ii) execute, in connection with any sale provided herein, any endorsements, assignments or other instruments of conveyance or transfer with respect to any of its Collateral; and

    (iii) (1) commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect any of its Collateral or any portion thereof and to enforce any other right in respect of any of its Collateral; (2) defend any suit, action or proceeding brought against such Grantor with respect to any of its Collateral; (3) settle, compromise or adjust any such suit, action or proceeding and, in connection therewith, give such discharges or releases as the Secured Party may deem appropriate; and (4) generally, sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of its Collateral as fully and completely as though the Secured Party were the absolute owner thereof for all purposes, and do, at the Secured Party's option and such Grantor's expense, at any time, or from time to time, all acts and things which the Secured Party deems necessary to protect, preserve or realize upon any of such Grantor's Collateral and the Secured Party's security interests therein and to effect the intent of this Agreement, all as fully and effectively as such Grantor might do.

Anything in this Section 6.1(a) to the contrary notwithstanding, the Secured Party agrees that it will not exercise any rights under the power of attorney provided for in this Section 6.1(a) unless an Event of Default shall have occurred.

    (b) If any Grantor fails to perform or comply with any of its agreements contained herein within the applicable grace periods, the Secured Party, at its option, but without any obligation so to do, may perform or comply, or otherwise cause performance or compliance, with such agreement.

    (c) All powers, authorizations and agencies contained in this Agreement are coupled with an interest and are irrevocable until this Agreement is terminated and the security interests created hereby are released.

    6.2 **Duty of Secured Party**. The Secured Party's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9.207 of the Code or otherwise, shall be to deal with it in the same manner as the Secured Party deals with similar property for its own account and the Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which comparable secured parties accord comparable collateral. To the fullest extent permitted under applicable law, neither the Secured Party nor any of their respective officers, directors, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of any

Grantor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof. The powers conferred on the Secured Party hereunder are solely to protect the Secured Party's interests in the Collateral and shall not impose any duty upon the Secured Party to exercise any such powers. The Secured Party shall be accountable only for amounts that they actually receive as a result of the exercise of such powers, and neither they nor any of their officers, directors, employees or agents shall be responsible to any Grantor for any act or failure to act hereunder, except for their own gross negligence or willful misconduct. To the fullest extent permitted by applicable law, the Secured Party shall be under no duty whatsoever to make or give any presentment, notice of dishonor, protest, demand for performance, notice of non-performance, notice of intent to accelerate, notice of acceleration, or other notice or demand in connection with any Collateral or the Obligations, or to take any steps necessary to preserve any rights against any Grantor or other Person or ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not it has or is deemed to have knowledge of such matters. Grantor waives any right of marshaling in respect of any and all Collateral, and waives any right to require the Secured Party to proceed against any Grantor or other Person, exhaust any Collateral or enforce any other remedy which the Secured Party now has or may hereafter have against any Grantor or other Person.

6.3  **Financing Statements**. Pursuant to Section 9.509 of the Code and any other applicable laws, Grantor, to the fullest extent permitted under applicable law, authorizes the Secured Party to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral in such form and in such offices as the Secured Party reasonably determines appropriate to perfect the security interests of the Secured Party under this Agreement. A photographic or other reproduction of this Agreement shall be sufficient as a financing statement or other filing or recording document or instrument for filing or recording in any jurisdiction.

## SECTION 7
## MISCELLANEOUS

7.1  **Amendments in Writing**. None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified without the prior written consent of the Secured Party.

7.2  **Notices**. All notices, requests and demands to or upon the Secured Party or any Grantor hereunder shall be effected in the manner provided for in the INMET Guaranty.

7.3  **No Waiver by Course of Conduct; Cumulative Remedies**. The Secured Party shall not, by any act (except by a written instrument pursuant to Section 8.1), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default. No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Secured Party of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any future occasion. The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

10

7.4 **Successors and Assigns**. This Agreement shall be binding upon the successors and assigns of Grantor and shall inure to the benefit of the Secured Party and their successors and assigns; provided that no Grantor may assign, transfer or delegate any of its rights or obligations under this Agreement without the prior written consent of the Secured Party.

7.5 **Counterparts**. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts (including by telecopy), and all of said counterparts taken together shall be deemed to constitute one and the same instrument. A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Secured Party. Telecopies shall be effective as originals.

7.6 **Severability**. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

7.7 **GOVERNING LAW**. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS AND, TO THE EXTENT CONTROLLING, LAWS OF THE UNITED STATES OF AMERICA.

7.8 **Submission To Jurisdiction; Waivers**. Grantor hereby irrevocably and unconditionally:

    a. submits for itself and its property in any legal action or proceeding relating to this Agreement, or for recognition and enforcement of any other judgment in respect thereof, to the non-exclusive general jurisdiction of the Courts of the State of Texas, the U.S. Federal Courts in such state sitting in the County of Harris, or in the courts of any other jurisdiction where such action or proceeding may be property brought, and appellate courts from any thereof;

    b. to the fullest extent permitted under applicable law, accepts the jurisdiction of such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same;

    c. agrees that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to such Grantor at its address referred to in Section 3.2 or at such other address of which the Secured Party shall have been notified pursuant thereto;

    d. agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and

11

e. waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this Section 8.10 any special, exemplary, punitive or consequential damages.

7.9 **Acknowledgments**. Grantor hereby acknowledges that:

a. it has been advised by counsel in the negotiation, execution and delivery of this Agreement;

b. the Secured Party does not have any fiduciary relationship with or duty to any Grantor arising out of or in connection with this Agreement or the INMET Guaranty, and the relationship between Secured Party, on one hand, and the Grantor, on the other hand, in connection herewith or therewith is solely that of debtor and creditor; and

c. no joint venture is created hereby or by the INMET Guaranty or otherwise exists by virtue of the transactions contemplated hereby.

7.10 **WAIVER OF JURY TRIAL**. GRANTOR AND THE SECURED PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND FOR ANY RELATED COUNTERCLAIM.

7.11 **Section Headings**. The Section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

7.12 **Acceptance.** Grantor hereby expressly waives notice of acceptance of this Agreement, acceptance on the part of the Secured Party being conclusively presumed by their request for this Agreement and delivery of the same to the Secured Party.

7.13 **Reinstatement.** The provisions of this Agreement shall remain in full force and effect and continue to be effective should any petition be filed by or against any Grantor for liquidation or reorganization, should any Grantor become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any part of any Grantor's assets or should any other financial impairment occur, and shall continue to be effective or be reinstated, as the case may be, if at any time payment or performance of the Obligations, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned to any obligee of the Obligations, whether as a "voidable preference", "fraudulent conveyance", or otherwise, all as though such payment or performance had not been made. In the event that any payment, or any part thereof, is rescinded, reduced, restored, or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

[Signature Page to Follow]

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed and delivered as of the date first above written.

INMET MINING, LLC

By: *(signed)*
Name: HUNTER HOBSON
Title: President

By: *(signed)*
Name: KEITH DYKE
Title: Vice President

BLUE TARPON CAPITAL, LLC

By: _____
Name: CORBIN J. ROBERTSON III
Title: President

SIGNATURE PAGE

# SCHEDULE 1

## FILINGS AND OTHER ACTIONS
## REQUIRED TO PERFECT SECURITY INTERESTS

Uniform Commercial Code Filings

| State | Office |
|---|---|
| Delaware | Secretary of State's Office |

Other Actions

NONE

Schedule 1-1

## **SCHEDULE 2**

## LOCATION OF JURISDICTION OF ORGANIZATION
## AND CHIEF EXECUTIVE OFFICE

| Grantor | Jurisdiction of Organization[1] | Organizational ID # | Federal Tax ID# | Chief Executive Office |
|---|---|---|---|---|
| INMET Mining, LLC | Delaware | [_____] | [_____] | 144 E. Marketplace Boulevard Knoxville, TN 37922 |